1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

UNITED STATES OF AMERICA,

CASE NO. CR13-0071JLR

11

Plaintiff,

ORDER DENYING MOTION
FOR COMPASSIONATE
RELEASE

v.

12

13

JOSEPH L. GARCIA,

14

Defendant.

15

## I.   INTRODUCTION

16

Before the court is Defendant Joseph L. Garcia's motion to reduce his sentence

17

pursuant to 18 U.S.C. § 3582(c)(1)(A)(1), commonly referred to as a motion for

18

compassionate release.  (*See* Mot. (Dkt. # 169); *see also* Supp. Mot (Dkt. # 178); Reply

19

(Dkt. # 189); Supp. Reply (Dkt. # 193).)  Mr. Garcia's motion is premised on his

20

assertion that he is at a high risk for developing significant complications from

21

Coronavirus Disease 2019 ("COVID-19") should he contract the disease while

22

incarcerated.  (*See* Supp. Mot. at 1-2 ("Mr. Garcia presents extraordinary and compelling

ORDER - 1

1   reasons for compassion based on his age and combined medical conditions causing his

2   heightened risk to COVID-19 and his exposure to the serious COVID-19 outbreak at

3   [Federal Correctional Institution ("FCI")] Fort Dix where he is serving his

4   sentence . . . .").)  Defendant United States of America ("the Government") opposes Mr.

5   Garcia's motion.  (*See* Resp. (Dkt. # 184).)  The court has considered Mr. Garcia's

6   motion, the parties' submissions filed in support of and in opposition to the motion, the

7   relevant portions of the record, and the applicable law.  Being fully advised,[1] the court

8   DENIES Mr. Garcia's motion.

9                              **II.   BACKGROUND**

10           On February 16, 2013, at 2:45 a.m., Whatcom County Sheriff's Office deputies

11   conducted a traffic stop on Mr. Garcia.  (PSR (Dkt. # 144) (sealed) ¶ 5.)  The deputies

12   impounded Mr. Garcia's vehicle.  (*See id.*)  On February 19, 2013, after obtaining a

13   search warrant for the vehicle, officers located 445.1 net grams of methamphetamine

14   (99.9% pure) under the front passenger seat.  (*Id.*)  On February 27, 2013, officers served

15   a search warrant on Mr. Garcia's business and his mobile home in Bellingham,

16   Washington.  (*Id.* ¶ 6.)  At Mr. Garcia's business, officers located two methamphetamine

17   pipes, two digital scales, and a list of known drug users and sellers.  (*Id.*)  In his home,

18   officers located a methamphetamine pipe, two jars of marijuana, expired medical

19

20           [1] Neither party requests oral argument.  (*See* Mot. at 1; Supp. Mot. at 1; Resp. at 1); *see also* Local Rules W.D. Wash. CrR 12(b)(12) ("A party desiring oral argument shall so indicate by typing ORAL ARGUMENT REQUESTED in the caption of the motion or responsive

21   brief.").  Further, the court does not consider oral argument to be helpful to its disposition of the issues here.  *See* Local Rules W.D. Wash. CrR 12(b)(12) ("Unless otherwise ordered by the

22   court, all motions will be decided by the court without oral argument.").

1    marijuana paperwork, a pound of drying marijuana buds and stems, and several scales.

2    (*Id.*)  The officers also found several bags of packaged marijuana outside the home in a

3    bag.  (*Id.*)  The officers located an indoor marijuana growing operation in another

4    building and seized 117 marijuana plants.  (*Id.*)

5            On February 28, 2013, Mr. Garcia turned himself in to the police and officers

6    booked him into Whatcom County Jail.  (*Id.*)  During an interview, he told officers he

7    had the ability to order 100 kilograms of marijuana, methamphetamine, or heroin from

8    Mexican cartels.  (*Id.*)  Mr. Garcia later stated that he could purchase up to 200 pounds of

9    methamphetamine, cocaine, or heroin with just a phone call to the cartel.  (*Id.*)

10           On April 2, 2014, during a stipulated facts trial, the court found Mr. Garcia guilty

11   of possession of methamphetamine with intent to distribute.  (Verdict (Dkt. # 142) at 1;

12   *see also* 4/2/14 Min. Entry (Dkt. # 143).)  On July 7, 2014, the court sentenced Mr.

13   Garcia 135 months of imprisonment pursuant to his conviction for one count of

14   possession of methamphetamine with intent to distribute in violation of 21 U.S.C.

15   § 841(a)(1) and (b)(1)(A).  (*See* Judgment (Dkt. # 149).)  Mr. Garcia is serving his

16   sentence at FCI Fort Dix, and is currently scheduled to be released on October 1, 2022.

17   (Resp. at 2.)

18           Prior to his 2014 conviction, Mr. Garcia's criminal record spanned decades.  (*See*

19   PSR ¶¶ 21-39.)  His criminal history begins at age 14 when he was arrested for

20   obstructing a law enforcement officer.  (*Id.* ¶ 21.)  Later that same year, he was convicted

21   of possession of alcohol and drug paraphernalia.  (*Id.* ¶¶ 22-23.)  Indeed, throughout his

22   teenage years, Mr. Garcia was repeatedly arrested and convicted for possession of alcohol

1 | or other intoxicants.  (*Id.* ¶¶ 22-32.)  At age 16, however, Mr. Garcia's offenses began to

2 | escalate, and he was convicted of disorderly conduct and assault in the second degree.

3 | (*Id.* ¶¶ 33-34.)

4 | By age 20, Mr. Garcia began to engage in drug offenses when he was arrested and

5 | convicted of possession of methamphetamine by a prisoner.  (*See id.* ¶ 36.)  At age 22, he

6 | is arrested and convicted of unlawful possession of methamphetamine with intent to

7 | deliver.  (*Id.* ¶ 37.)  The court dismissed charges for possession of a stolen firearm and

8 | unlawful possession of a firearm in the first degree.  (*Id.*)  At the time of his arrest,

9 | officers searched his vehicle and located a stolen Ruger 9mm gun, three loaded

10 | magazines, ammunition, and almost one ounce of methamphetamine, drug packaging

11 | materials, drug paraphernalia, and $2,223.00 in cash.  (*Id.*)

12 | At age 25, Mr. Garcia was arrested and convicted for unlawful possession of a

13 | firearm in the first degree and unlawful possession of more than 40 grams of marijuana.

14 | (*Id.* ¶ 38.)  When officers searched Mr. Garcia's vehicle following an altercation with his

15 | wife, they discovered a loaded semi-automatic handgun and a duffle bag containing 167

16 | gross grams of marijuana.  (*Id.*)  During Mr. Garcia's supervision following these

17 | convictions, he was cited for several violations including failing to complete chemical

18 | dependency treatment and possessing controlled substances.  (*Id.*)  He also tested positve

19 | for methamphetamine on December 13, 2011.  (*Id.*)

20 | Finally, at age 26, Mr. Garcia was stopped for a traffic violation and searched for

21 | officer safety due to his criminal history.  (*Id.* ¶ 39.)  The officer discovered .8 grams of

22 | methamphetamine, .5 grams of marijuana, and a methamphetamine pipe.  (*Id.*)  Mr.

1  Garcia was arrested and later convicted of attempted possession of methamphetamine and

2  unlawful possession of marijuana.  (*Id.*)

3       In addition to his criminal history in the United States, on November 22, 2001, Mr.

4  Garcia was arrested by the Royal Canadian Mounted Police in British Columbia, Canada,

5  on two counts of possessing unauthorized firearms.  (*Id.* ¶ 41.)  At the time of his

6  sentencing on his current conviction, there was an outstanding warrant for Mr. Garcia's

7  arrest in Canada.  (*Id.*)

8       Mr. Garcia is 41 years old.  (*See* Supp. Mot. at 7; Resp. at 3.)  Mr. Garcia asserts

9  that he is at high risk for developing severe or more serious complications if he contracts

10  COVID-19 because he is Hispanic and because he is obese, has glaucoma, and suffers

11  from mental illness.  (Supp. Mot. at 7-10.)  Mr. Garcia also states that he was diagnosed

12  with asthma as a child but has not used an inhaler for the last 10 years.  (*Id.* at 2.)  The

13  Government points out that Mr. Garcia's medical records at FCI Fort Dix, dating back to

14  2017, show no other health issues.  (Resp. at 3, *see also* Gov't Ex. A (Dkt. # 186) (sealed)

15  (attaching Mr. Garcia's medical records).)  Further, the Government argues that none of

16  the risk factors Mr. Garcia relies upon are recognized by the Centers for Disease Control

17  ("CDC") as putting individuals at higher risk for severe illness from COVID-19.  (Resp.

18  at 9-10.)

19       In his supplemental reply, Mr. Garcia notes that although the CDC formerly

20  defined obesity that increased COVID-19 risk as having a body mass index ("BMI") of

21  40 or more, the CDC recently redefined the COVID-19 obesity risk as having a BMI or

22  30 or more.  (*See* Supp. Reply at 1 (citing https://www.cdc.gov/coronavirus/2019-

1   ncov/need-extra-precautions/people-withmedical-conditions.html#obesity (last visited

2   July 7, 2020)).)  The Government does not dispute that Mr. Garcia has a BMI greater

3   than 30.  (*See* Resp. at 10 (acknowledging Mr. Garcia's BMI of 30.7).)  In a reply brief in

4   support of a stay that the Government filed in the Supreme Court in *Williams v. Wilson*,

5   No. 19A1041, a civil lawsuit involving FCI - Elkton, the United States asserted the

6   position that an "inmate's diagnosis with a medical condition that the CDC has identified

7   as a risk factor for COVID-19, and from which the inmate is not expected to recover,

8   presents an 'extraordinary and compelling reason[]' that may warrant compassionate

9   release if other criteria are also met."  (*See* Supp. Resp. at 2, Ex. AA.)  Mr. Garcia argues

10  that this admission is binding on the Government here.  (*See id.*)

11      The court now considers Mr. Garcia's motion for compassionate release.

12  ### III.   ANALYSIS

13      A court generally may not correct or modify a prison sentence once it has been

14  imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35.

15  *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003); *see also Dillon v. United*

16  *States*, 506 U.S. 817, 824-25 (2010) ("'[A] judgment of conviction that includes [a

17  sentence of imprisonment] constitutes a final judgment' and may not be modified by a

18  district court except in limited circumstances.") (quoting 18 U.S.C. § 3582(b)).  One such

19  statute is 18 U.S.C. § 3582(c)(1), which governs motions for compassionate release.  *See*

20  *United States v. Fuller*, No. CR17-0324JLR, 2020 WL 1847751, at * 2 (W.D. Wash. Apr.

21  13, 2020).  Until recently, only the Bureau of Prisons ("BOP") could bring a motion for

22  the compassionate release of a prisoner, but the First Step Act of 2018 amended 18

U.S.C. § 3582(c)(1) so that federal prisoners may now seek such release directly from the court. The statute now provides the court with authority to reduce a sentence upon the motion of an inmate if three conditions are met: (1) the inmate has either exhausted his or her administrative rights to appeal BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the United States Sentencing Commission's policy statement. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also Riley v. United States*, No. C19-1522JLR, 2020 WL 1819838, at *5 (W.D. Wash. Apr. 10, 2020). Here, the court need not consider whether Mr. Garcia has met the second condition of establishing "extraordinary and compelling reasons" for a reduction in his sentence because he has not met either of the other two criteria.

**A.      Exhaustion of Administrative Remedies**

The court first considers whether Mr. Garcia has exhausted his administrative remedies. Mr. Garcia "bears the burden of showing that he exhausted his administrative rights with the BOP before filing his compassionate-release motion." *United States v. Van Sickle*, No. CR18-0250JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (citing *United States v. Johnson*, No. 4:00-CR-40023, 2020 WL 1434367, at *1 (W.D. Ark. Mar. 24, 2020) and *United States v. Davis*, No. 2:15-CR-20067-SHM, 2019 WL 6898676, at *1 (W.D. Tenn. Dec. 18, 2019)); *see also United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020) (holding that a

//

1  defendant bears the burden of establishing his or her entitlement to a reduced sentence)

2  (citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).

3        Despite the Government's apparent concession that Mr. Garcia has exhausted his

4  administrative remedies concerning his second motion for compassionate release (*see*

5  Resp. at 8), the court disagrees as a matter of law.  The Government states that because

6  "30 days have passed since [Mr. Garcia's] request was made to the warden," it does not

7  dispute that he "satisfied the exhaustion requirement."  However, Section 3582(c)(1)(A)

8  provides that a defendant may only file a motion for compassionate release after (1) fully

9  exhausting his "administrative rights to appeal a failure of the [BOP] to bring a motion on

10  the defendant's behalf" or (2) a "lapse of 30 days" from the warden's receipt of the

11  defendant's request.  18 U.S.C. § 3582(c)(1)(A).  The statute does not allow a defendant

12  to short-circuit the BOP's administrative procedures simply by waiting 30 days after

13  filing the request if the warden timely acted on the request.  *United States v. Miller*, No.

14  2:16-CR-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020), *reconsideration*

15  *denied*, No. 2:16-CR-00269-BLW, 2020 WL 2202437 (D. Idaho May 6, 2020).  "In this

16  context 'lapse' clearly means that the warden must fail to act on the defendant's request

17  for a period of 30 days."  *Id.* (citing *Lapse*, Black's Law Dictionary (11th ed. 2019)).

18  "The 30-day period gives the warden time to respond to the inmate's request but prohibits

19  the warden from sitting on the request beyond 30 days."  *United States v. Sims*, No.

20  CR19-0262JLR, 2020 WL 2838611, at *4 (W.D. Wash. June 1, 2020).

21        Here, Mr. Garcia admits that he submitted two requests for compassionate release

22  to his facility on April 28, 2020, and April 29, 2020, respectively.  (Supp. Mot. at 3, Ex.

A.)  He also admits that he received responses to both his requests on May 4, 2020, and

May 18, 2020, respectively.  (*See id.*)  Both responses asked Mr. Garcia to provide

additional information, and both responses also advised Mr. Garcia that if he was

"dissatisfied," he could "appeal the decision through the Administrative Remedy

process."  (*See id.*, Ex. A at 4, 5.)  On May 21, 2020, Mr. Garcia attempted to appeal both

the May 4, 2020, and the May 18, 2020, responses to his requests for compassionate

release.  (*See id.* at 7-11.)  On May 22, 2020, the Administrative Remedy Coordinator at

FCI Fort Dix provided a "Rejection Notice" to Mr. Garcia concerning his attempted

appeal.  (*Id.* at 6.)  In the Rejection Notice, the Administrative Remedy Coordinator

advised Mr. Garcia that his appeal was "being rejected and returned" for three reasons.

(*Id.*)  First, he needed to submit the appeal through his counselor or "other authorized

person" at the facility.  (*Id.*)  Second, he needed to submit the correct number of copies of

his appeal.  (*Id.*)  Finally, he needed to attach to his appeal not only his requests for

compassionate release to that he had submitted to the warden but the warden's response

as well.  (*Id.*)  At this point, there is no evidence in the record that Mr. Garcia made the

required corrections or attempted to resubmit his appeal in the proper format.  (*See

generally* Dkt.)  Thus, the court concludes that Mr. Garcia failed to fully exhaust his

administrative appeal rights.  Mr. Garcia may not simply short-circuit the administrative

process by filing his motion with the court within 30 days of his request to the Warden.

Where the Warden has timely responded to a prisoner's request within 30 days, that

prisoner must exhaust his administrative appeal rights before filing a motion with the

court.  *See Sims*, 2020 WL 2838611, at *4.

1    The court also recognizes that some courts have interpreted 18 U.S.C.

2    § 3582(c)(1) to mean that a motion for compassionate release may be submitted to the

3    sentencing judge once 30 days have passed after a warden's receipt of a defendant's

4    request regardless of whether the warden acted upon the request within 30 days.  *See,*

5    *e.g.*, *United States v. Peuser*, No. 8:17CR60, 2020 WL 2732088, at *1 & n.1 (D. Neb.

6    May 26, 2020) (recognizing the alternate interpretation but stating that most courts agree

7    that if the Warden denies a request within 30 days, the defendant must exhaust his

8    administrative remedies and citing myriad cases); *United States v. Arthaloney*, No.

9    8:18CR127, 2020 WL 2571171, at *1 & n.1 (D. Neb. May 21, 2020) (same).

10   Nevertheless, most courts have interpreted the language to mean that a motion for

11   compassionate release may be submitted to the sentencing judge if 30 days have lapsed

12   and the warden failed to respond, but if the warden denied the request within 30 days of

13   receipt, the defendant must exhaust his administrative remedies within the BOP before

14   filing a motion with the court.  *See Peuser*, 2020 WL 2732088, at *1; *Arthaloney*, 2020

15   WL 2571171, at *1.  This court is persuaded that the majority's interpretation of 18

16   U.S.C. § 3582(c)(1) is the correct one.

17        "This court and other district courts in the Ninth Circuit that have considered [the

18   exhaustion] issue have nearly unanimously concluded that failure to exhaust

19   administrative remedies is fatal to a compassionate release motion even in light of the

20   urgency created by COVID-19."  *Sims*, 2020 WL 2838611, at *4 (citing *Van Sickle*, 2020

21   WL 2219496, at *4 and *Fuller*, 2020 WL 1847751, at *2 (citing numerous cases)).

22   //

ORDER - 10

1  Accordingly, the court DENIES Mr. Garcia's motion for compassionate release for

2  failure to exhaust his administrative remedies.

3  **B.      The United States Sentencing Commission's Policy Statement**

4         In addition, however, even if Mr. Garcia did exhaust his administrative remedies,

5  Mr. Garcia's motion is deficient for a second reason.  As noted above, before granting

6  compassionate release, the court must find that the defendant's release is consistent with

7  the United States Sentencing Commission's policy statement.  *See* 18 U.S.C.

8  § 3582(c)(1)(A)(i); *see also Riley*, 2020 WL 1819838, at *5.  The Sentencing

9  Commission's policy statement is found in the United States Sentencing Guidelines

10  ("USSG") § 1B1.13.[2]  The policy statement provides in relevant part:

11      [T]he court may reduce a term of imprisonment (and may impose a term of
        supervised release with or without conditions that does not exceed the
12      unserved portion of the original term of imprisonment) if, after considering
        the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are
13      applicable, the court determines that—

14      (1)(A) Extraordinary and compelling reasons warrant the reduction; or (B)
        The defendant (i) is at least 70 years old; and (ii) has served at least 30 years
15      in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the
        offense or offenses for which the defendant is imprisoned;
16
17      (2) The defendant is not a danger to the safety of any other person or to the
        community, as provided in 18 U.S.C. § 3142(g); and

18      (3) The reduction is consistent with this policy statement.

19  //

20  _____

21  [2] The Sentencing Commission is statutorily required to create the referenced policy
    statement.  *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be
    considered extraordinary and compelling reasons for sentence reduction, including the criteria to
22  be applied and a list of specific examples.  Rehabilitation of the defendant alone shall not be
    considered an extraordinary and compelling reason.").

ORDER - 11

1   USSG § 1B1.13.  Even if Mr. Garcia could demonstrate that, as a result of presence of

2   COVID-19 in his facility, his underlying medical conditions constitute "[e]xtraordinary

3   and compelling reasons" warranting his release under subsection (1)(A),[3] he fails to

4   demonstrate that he "is not a danger to the safety of any other person or to the

5   community" under subsection (2) of USSG § 1B1.13.  *See United States v. Gotti*, --- F.

6   Supp. 3d ----, 2020 WL 497987, at *6 (Jan. 15, 2020) (concluding that even if a federal

7   prisoner had met his burden of showing eligibility for compassionate release due to his

8   compromised medical condition, the court is not required to release him if he continues to

9   be a danger to the community).  Thus, he cannot satisfy the third requirement for

10  compassionate release that his release is consistent with the United States Sentencing

11  Commission's policy statement.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).

12          In determining whether a prisoner continues to be a danger to the safety of any

13  other person or to the community, Subsection (2) of USSG § 1B1.13 points the court to

14  the factors listed in 18 U.S.C. § 3142(g).  *See* USSG § 1B1.13.  Under Section 3142(g),

15  relevant factors that the court should consider here include:  the nature and circumstances

16  of the crime charged, including whether the offense involves a controlled substance, the

17  defendant's history and characteristics, including his character, his physical and mental

18  condition, his family and community ties, his employment, his past conduct, his history

19  relating to drug and alcohol abuse, and his criminal history.  *See* 18 U.S.C. § 3142(g).  As

20  //

21

22          [3] Mr. Garcia does not qualify for release under subsection (1)(B) because he is not at least
    70 years old and he has not served at least 30 years in prison.

1   discussed below, a review of these factors precludes the court from finding that Mr.

2   Garcia is not a danger to the safety of others and the community.

3          First, the court considers the nature and circumstances of the crime charged.  At

4   the time he was interviewed regarding the offense for which he is currently incarcerated,

5   Mr. Garcia stated that he could order a substantial amount of controlled substances, such

6   as methamphetamine, cocaine, or heroin with just a phone call to a Mexican cartel.  (PSR

7   ¶ 6.)  The fact that the crime for which Mr. Garcia is presently serving time involved the

8   possession of a controlled substance with the intent to distribute weighs against a finding

9   that Mr. Garcia no longer poses a danger to the community.  *See* 18 U.S.C. § 3142(g).

10   Further, although Mr. Garcia's statement concerning his access to Mexican cartels

11   occurred more than seven years ago (*see* PSR ¶ 6), the court has no reason to believe that

12   Mr. Garcia could not and would not attempt to refresh those connections.

13          In addition, Mr. Garcia's history, including his criminal history, his past conduct,

14   and his history relating to drug and alcohol abuse, all weigh against finding that he no

15   longer poses a danger to the safety of others or the community.  *See* 18 U.S.C. § 3142(g).

16   Mr. Garcia has spent decades of his life incarcerated for drug related offenses.  (*See* PSR

17   ¶¶ 21-39.)  Incarceration has not deterred further criminal conduct.  (*See id.*)  His abuse

18   of controlled substances and alcohol dates back to his teenage years and has continued

19   unabated whenever he is not incarcerated.  (*See id.*)  In addition to his numerous offenses

20   related to controlled substances, Mr. Garcia has also been arrested and convicted of

21   firearm offenses—both in the United States and in Canada.  (*See id.* ¶¶ 37-38, 41.)  Based

22   upon the foregoing analysis, the court finds that Mr. Garcia would be a danger to the

ORDER - 13

1    community if he were released.  Accordingly, he cannot satisfy the requirements for

2    compassionate release, and the court DENIES his motion on this independent ground as

3    well.

4                              **IV.    CONCLUSION**

5            For the reasons set forth above, the court DENIES Mr. Garcia's motion for

6    compassionate release (Dkt. # 169).

7            Dated this 8th day of July, 2020.

8

9            _____

10           JAMES L. ROBART
             United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22